and Mr. Aquino, hello. Good morning. Good morning. You may begin. Thank you. Tom Aquino for the Your honors, there's a significant risk. Brown's conviction for reckless injury is based on conduct that is not a crime under Wisconsin law, namely his decision to use force and not retreat when he was about to be attacked on his driveway. The Wisconsin Court of Appeals agreed with us that under the Wisconsin Castle Doctrine, the jury should have been instructed that it cannot consider his opportunity to retreat when assessing the overall reasonableness of his conduct and whether he created an unreasonable risk of harm. Mr. Aquino, can I ask you, my understanding of this record is that actually before we get to this castle, or at least to the impact of the failure to include the castle instruction, there's an underlying factual question, which is where did the encounter take place? I understand that Mr. Brown says it's kind of halfway up the driveway and you have the one witness with maybe not such a great opportunity to observe, but whatever, you've got somebody. And then there's other evidence that suggests that the encounter takes place down at the end of the driveway, perhaps even in the street, and if it's not even on his property, then the existence or nonexistence of the castle instruction is neither here nor there because he has to have been on, in his castle metaphorically, he has to have been on the driveway. So isn't this then just a factual issue that the Wisconsin courts assess and they decide that it really wasn't going to make that much difference because there's so many other elements of self-defense, such as the proportionality of the attack, do you plunge an eight-inch knife into somebody's brain when they have two pieces of wood in their hand? Things like that. I just wonder whether we jump all the way to the legal issue that you're discussing. Well, it's a factual question up to the jury where this incident occurred. There was evidence on either side. I don't see where the castle instruction prevented the jury from reaching that issue. The castle instruction was once you decide that he was on the driveway, then they shouldn't have considered his opportunity to retreat further into the house, but I don't see where the castle instruction has anything to do with that predicate factual question. Well, the Court of Appeals decided that he was entitled to the castle doctrine instruction, so he and the jury should have considered the castle doctrine instruction. But wasn't the Court of Appeals saying, in a sense, if the jury made the predicate fact finding that the encounter took place in the driveway, then the castle instruction should have been there and it should have understood that it shouldn't expect him to retreat further. But if the jury had decided, in other words, there's a contingent finding, isn't there? Where did it happen? It's a factual question up to the jury where the incident happened, whether it was an act of self-defense where the defendant was standing his ground and the victim was running up the driveway to attack him, or whether, as the state claims, the defendant went to the end of the driveway and stabbed the victim. Now, importantly, the state's version of events, theory of what happened, was that Mr. Brown went inside his house, grabbed a knife, went to the end of the driveway, and then stabbed the victim in the head. And that's why they charged him with attempted first-degree murder. But the jury acquitted him of attempted first-degree murder, which is strong evidence that they did not believe that this is what happened, that they at least had a reasonable doubt based on the witness's testimony, the conflicting witness's testimony. Yes, the blood was found at the end of the driveway, but there was no forensic evidence, no expert testimony that the victim had to have dropped immediately where he was stabbed. In fact, there was testimony that the victim, A, he survived, and he was conscious enough he was trying to remove the knife from his head, and his wife testified that she was trying to stop him from removing the knife from his head. There was no expert testimony that the nature of the brain injury that he suffered would have caused him to immediately fall to the ground where he was struck. And it was the state's burden to prove that if they wanted to prove that this incident happened outside of the driveway and on the street, and where the Castle Doctrine didn't apply. They did not meet this burden because they didn't provide any of the evidence. And the fact that the jury acquitted him of attempted first-degree murder is very strong evidence that the state, in fact, did not meet its burden. Well, you've offered some theories to reconcile these two jury verdicts, and the state has offered some theories, but one of them could simply be, you know, attempted first-degree homicide has a mens rea requirement that the jury may have thought simply wasn't met, such that the other offense was a better fit for what happened. Again, the state's theory was that he went inside his house, got a knife, went to the end of the driveway and stabbed him in the head. I don't see how, I don't think it's very skeptical that a jury would find that a defendant, that the state proved that went through such deliberate steps, stabbed a person in the head, but without the intent to kill that person. But grabbing a knife from the grill, which is his theory, and then going down and stabbing somebody in the head with it strikes me as more or less the same. You've got the knife, procured the knife. Right, he has the knife, but the question is whether the victim who had already tackled him and caused a cut on his arms earlier that day was much younger. There was testimony that he was very drunk and belligerent the whole evening, was a bigger guy and younger guy than my client, ran up the driveway to him, and then reacted by swinging the knife. Importantly, the prosecutor specifically argued that it was the opportunity to retreat that made any kind of self-defense claim inapplicable. That argument should not have been made. The prosecutor specifically argued, pages 96 and 97 of 5-14, that she talked about the defendant's ability to safely retreat. Even if you're right, though, that that was an error. And the Wisconsin Appellate Court, I think, agrees with you that that was an error. Normally, we have to then ask whether that error was so poisonous as to affect the result. And looking at the full instructions on reckless injury and self-defense, even before you get to tassels and the like, did the defendant provoke the attack? Is there an unreasonable risk? Is the amount of response unreasonable and substantial? There are lots of things that don't have anything to do with retreating. There are, but it was up to the jury to make this decision and to decide what happened there. And the Wisconsin court, I think, using ill-chosen language, I agree with you on this, about whether credibility is—they didn't have any business deciding on that. They certainly seem to have said the evidence was just overwhelming, that Brown was acting in such a violent and disproportional way that he was at least guilty of first-degree reckless injury. Well, I think that was an unreasonable decision because, again, it was totally discounting his own testimony. Defendants are allowed to testify, and juries are allowed to believe defendants. There was a witness whose testimony was completely inconsistent with the state's theory of what happened. She testified that she saw the victim walking to the street and then collapsing. If she had seen what the state claims happened, she would have seen Mr. Brown stab him. She did not see that. Wasn't that when she was on the phone to 911? At some point, she's on the phone to 911. Right. She's on the phone to 911. She hears that there's some altercation. She calls 911, so she doesn't see the actual stabbing. But what she does see is when the victim collapsed, which was at the street, and it was after he was walking, after his wife was telling him to get into the car, and without Mr. Brown there having just stabbed him. If I'd like to reserve the rest of my time. Thank you. Of course. Thank you. Ms. Potts. Good morning. My name is Abigail Potts, and may it please the court, I'm here representing the respondent in this appeal. Ms. Potts, the failure to instruct the jury on the castle doctrine did open the door for the prosecutor to argue that even if Brown was attempting to defend himself, he nonetheless could have retreated into the house. How do we know that the jury didn't rely on that argument? Well, I think the point that you are raising goes to whether or not the castle doctrine would have had an effect at all. And I think we, we, we acknowledge that the castle doctrine is beneficial to a defendant and would have had some effect. But the problem for Mr. Brown's case is that that effect simply does not rise to the level to make it cognizable in federal habeas, or get over the harmless error bump. So, well you've identified a good point that the doctrine would have affected how certain evidence was presented to the jury. And we don't deny that. And we acknowledge that the castle doctrine serves a purpose. I think the most important thing for this court today to really focus on because we don't have a lot of time is that that that benefit that the castle doctrine gives to a defendant is simply not big enough or or the nature of it isn't such to even come close to really triggering a federally protected constitutional right under the due process clause. And I would say that, excuse me, if the shouldn't the omitted jury instruction have included language about presuming that Brown's use of force was reasonable. And if the jury had been told to presume that, why can't we assume that's just what it would have done. Well, you're right that that that the instruction that was not given in which the state court concedes was an error that it should have been given would have included language about a presumption it would have added a presumption for the jury to consider when evaluating the evidence on self defense, which is a strong piece of. Well, it's a strong assistance to Brown's case, isn't it. I acknowledge it would be an assistance. I think when you use the word strong we get into this idea of what is really the nature of the castle doctrine the castle doctrine here does not change the elements of the crime or the burdens of proof on the state, and I think it's really instructive to look at how the castle doctrine differs from just general basic self defense. So, the castle doctrine is a subsection in the Wisconsin law on the self defense privilege. And when a defendant triggers self defense. They don't need to show evidence they just need to raise it, and all of a sudden an additional burden is created on the state to disprove self defense beyond a reasonable doubt. So basic self defense kind of adds this additional burden of proof. When a defendant goes on to then also trigger the castle doctrine, or ask for a castle doctrine instruction, and the instruction is given that instruction does not add an additional burden of proof on the state what that instruction does is set some parameters and some evidentiary. At that point, how they evaluate the evidence you said so yeah, I would say that it's fundamentally evidentiary, and basically does not rise to the level it's not fundamental enough to really trigger that fundamental fairness. That triggers the due process clause, I mean we have to keep in mind here we're, we're in federal habeas here. So we generally are not going to correct errors of state law. So, in order to warrant the relief that Mr Brown seeks he needs to show something fundamental here that is wrong fundamental fairness has been, you know, has been affected here or he's deprived of fundamental fairness. And we just can see from the case law that is available from this circuit, and from the US Supreme Court, that the castle doctrine does not trigger that protection that due process protection and I think one of the most instructive cases on this is this court's 2006 case. In the case of Charlton be Davis, where the court really took the time to distinguish an affirmative defense in that case it was accident and I acknowledge that's a different type of defense than this. But it was the accident defense from something more basic that actually shifts the burden on the state, or creates another element to a crime or changes the elements of the crime, and the court here said and made clear that the due process protections are not implicated, where an instruction would merely have changed the way the jury views the evidence, and that in a case in that case the instruction was on the accident defense. It would have also changed the way the prosecutor argued you see. I agree. I agree that it would put some parameters on how the evidence is presented to the jury, and what evidence could be presented. Again, I would just simply say that no court has found that something like the castle doctrine so a state law that is a subsection to an affirmative defense of self defense triggers federal due process protections, and that is because, as we see in Mr. Brown's case here, the state had to prove the elements of his crime, which, which was first degree reckless injury, had to prove those elements beyond a reasonable doubt, and then also had to disprove self defense beyond a reasonable doubt regardless of argument, and it makes it harder for the state this court and the US Supreme Court have both said that that doesn't that simply doesn't trigger the due process protections, the way, maybe basic self defense if he hadn't gotten a self defense instruction at all, that would be a better argument for Mr. Brown, but here he got that instruction. And so the, the fact. Yeah. Okay. I wish I think I think I was basically done I was just basically didn't say that, that, that, well he was deprived of some benefit. It is not a benefit that that triggers a constitutionally a federal constitution protected interest. And that's why Judge crab properly dismissed and denied his petition in this case, but go ahead, Judge Robin. Yeah, I wanted to ask you this before you have to sit down. Well, you are sitting down. Okay. Even if instructional errors relating to affirmative defenses. Normally, don't rise to the level of the due process violation isn't self defense unique among affirmative defenses in the burden that it imposes on the state to disprove it once raised. I would agree with that. And I think that it is less clear whether or not denial of a self defense instruction itself would have triggered a due process violation. I think Mr Brown would have a much better argument for relief. If he hadn't gotten the self defense instruction, but here he did get that instruction he got the instruction that told the jury that the state had to be on a reasonable doubt, prove that he was not acting in self defense so he got that protection that is afforded there. How if it were successful. Could the defense operate to negate an element of the state's case. I'm sorry, can you repeat it again. I'm just wondering if it were successful. How the defense. How could the defense, then, negate an element of the state's case. So, I think, correct me if I'm wrong about what you're asking. If, if he got the castle doctrine instruction, and he was able to show that he actually defended his castle up at the top of his driveway. If, if, if he was able to show that so the jury actually applied the castle doctrine presumptions. But the driveways included. So, sure, but not the street where the blood was so he had to convince the jury that that his story that the victim came up the driveway and he stabbed the victim up in his driveway. If they believed that and they went to apply the castle doctrine presumptions, and the state could still prove self defense by showing that Mr Brown was the aggressor. So I think that's kind of judge crabs point to a little bit on the harmless error analysis, which is that Mr Brown just if he got the instruction it's not like he's home free. It still has to apply. It does not prove self defense, he still has to show some stuff, the jury still has to believe that the victim was the aggressor. And based on the record in this case that's just not reasonable, according at least to every other court that has viewed the record in this case. Thank you. Thank you very much. Now, Mr. I'm going to give you what you asked for the three minutes for rebuttal.  First off, this this error was not just an evidentiary error. This was an error that went to the definition of the crime for which he was convicted. And here in the crime that he was convicted reckless injury, whether or not he was acting in self defense is incorporated into the mens rea element. The jury was instructed as part of the mens rea element that the state had to prove that the defendant create a risk of death or great bodily harm that was quote unreasonable and substantial. The very next paragraph in the instructions explains how self defense applies and says that quote, if the defendant was acting lawfully in self defense is conduct did not create an unreasonable risk to another. So what this stuff, what the castle doctrine does what self defense does, or by not reading the self defense instruction. It expanded the scope of criminal conduct beyond what Wisconsin law allows it allows the court, the jury to find him guilty for deciding to stand his ground, instead of retreating, or instead of using force, excuse me instead of retreating. And this is similar in kind to other cases where there's been a due process violation in Sanders v cotton and Colby young, which are cited in my brief and Sanders v cotton, the air in the state court instruction was failing to instruct on that absence of sudden heat element. And that was a violation of his due process rights under Winship because that allowed the state to get a conviction, without having to prove absence of sudden heat. Similarly, in the cold case what happened was the state court did not give a definition of of great bodily harm. And so that expanded the scope of conduct to that for which the defendant could be convicted to harm that wasn't great bodily. And in the same way here by not reading the self defense, or excuse me the castle doctrine version of the self defense instruction, it allowed the defendant to be convicted, because the jury concluded his use of force was unreasonable in light of his opportunity to earlier on in the interaction, go into his garage. So this, and again, yes, there are lots of cases, you're lots of factual issues in this case about who was provoking whom, who was the aggressor but those are all jury questions and he had a right to have the jury decide all these, all these issues, and the courts erroneous, you know, instruction deprived him of that right. Did the jury hear about the castle doctrine. No jury did not hear about the castle doctrine whatsoever. And that, well, that seems to be what their problem is, at least one of them. Right. It's, it's the fact that the jury did not. The jury instead of being told that they couldn't consider their specifically told that it should consider his opportunity to retreat, and the prosecutor use the fact that he arguably had an opportunity to retreat to argue why he should be convicted of reckless injury. If the court believed his version of events that he was attacked, as opposed to the state's version of events, which is that he went down to the end of the driveway with a knife that he got from his house and stabbed the defendant in the head. Mr. Queen. Oh, how many years has he, sir. Five or six. At this point, this is a 2015 case, I believe. And was the sentence 12 years or 14. I believe it was, I believe it was 12 and seven I'm not. I didn't bone up on that part of the judgment, I apologize. No, no, no. You know, has nothing to do with anything I just was wondering. Okay. Thank you both very much. Thank you. And the case will be taken under advisement. Were you appointed Mr. Queen now. Yes, Your Honor. Yeah. You have the thanks of the court for the work that you have done on behalf of your client. And of course, Miss Potts. The state also has. Thanks. Thank you. The government I should say. All right. Case is taken under advisement. Take care of yourselves. Bye bye. Thanks.